## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-CV-21053-GAYLES/LOUIS

JEFFREY PETER DATTO, PH.D.,

      Plaintiff,

v.

ASSOCIATION OF AMERICAN MEDICAL
COLLEGES, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon two Motions to Dismiss the Amended Complaint, one filed by Defendant Association of American Medical Colleges ("AAMC") (ECF No. 76), the other jointly filed by Defendants Ohio State University ("OSU"), University of Central Florida ("UCF"), and University of Miami ("UM") (together, the "University Defendants") (ECF No. 92). The Motions were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Darrin P. Gayles, United States District Judge, for a Report and Recommendation (ECF Nos. 139, 140, 141). A hearing on the Motions was held before the undersigned on April 22, 2019. The Court has carefully reviewed the Parties' submissions and is otherwise duly advised in the premises. Upon consideration, the undersigned issues the following recommendations.

## I.     BACKGROUND

Plaintiff Jeffrey Datto was a MD/PhD student formerly enrolled at Thomas Jefferson University ("TJU"), a member school of the AAMC (Am. Compl. ¶ 61).[1] At some point, Plaintiff sued TJU in Pennsylvania state court, alleging that he had been discriminated against for being perceived as having Bipolar Disorder (¶ 63). The case settled, and Plaintiff sought to apply to other medical schools (¶¶ 80-81). Plaintiff received a score of 32 on his MCAT,[2] had an undergraduate grade point average of 3.82, had significant experience, and received ten letters of recommendation (¶¶ 82-85). Plaintiff applied to a number of medical schools, also members of the AAMC, over the course of three years and three application cycles, using the AAMC's application process (¶¶ 89, 92-94, 104). However, despite his academic qualifications and experience, Plaintiff's application was rejected by all schools he applied to (¶¶ 86, 90, 95-96, 106, 108). Upon information, Plaintiff discovered that he was denied from the medical schools either because of the events that transpired at TJU, or his lawsuit against TJU (¶ 107); Plaintiff also claims that his perceived disability may have influenced the decision of the medical schools in rejecting his applications (¶ 88).

Plaintiff, proceeding *pro se*, initiated the present action in this Court on March 20, 2018 (ECF No. 1), and amended his complaint as a matter of course on September 17, 2018 (ECF No. 62). The operative Amended Complaint alleges eight counts against thirteen defendants under the Americans with Disabilities Act, 42 U.S.C. § 1201, *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehab Act"), the Florida Civil Rights Act, Fla. Stat. § 760, *et seq.* ("FCRA"), and Florida common law for breach of contract and intentional infliction

---

[1] The facts recited herein are taken from the Amended Complaint (ECF No. 62). The factual allegations contained in the Amended Complaint are taken as true for purposes of the Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).
[2] The Medical College Admission Test. *See* https://students-residents.aamc.org/applying-medical-school/taking-mcat-exam/about-mcat-exam/.

of emotional distress. Five of the defendants have never made an appearance in this litigation;[3] four of the defendants settled their claims with Plaintiff and have been voluntarily dismissed.[4] Accordingly, the only defendants remaining in this case are AAMC, and universities OSU, UCF, and UM.[5]

On October 15, 2018, AAMC filed a Motion to Dismiss the Amended Complaint (ECF No. 76); the University Defendants filed their own Joint Motion to Dismiss on November 16, 2018 (ECF No. 92). The Motions generally attack the Amended Complaint for violating the pleading standards of Federal Rules of Civil Procedure 8 and 12(b)(6). With respect to AAMC and OSU, the Motions aver that the Amended Complaint fails to plead personal jurisdiction and venue; similarly, UCF contends that the Southern District of Florida is the improper venue for Plaintiff's claims against it. For the reasons set forth below, the undersigned agrees that the Amended Complaint lacks allegations sufficient to establish this Court's personal jurisdiction over Defendants AAMC and OSU, and rejects UCF's challenge to venue. Because the Amended Complaint fails to clearly and concisely allege facts attributable to each of the Defendants as mandated by Rule 8, the undersigned recommends granting the Motions to Dismiss, with leave to amend. Finally, in effort to avoid repetition in the pleading deficiencies in any amended complaint, the undersigned has considered each of Defendants' 12(b)(6) arguments below.

---

[3] The non-participating defendants are Florida Atlantic University Board of Trustees; University of Florida Board of Trustees; Florida State University Board of Trustees; University of South Florida Board of Trustees; and Florida International University Board of Trustees.

[4] The dismissed defendants are Drexel University, Temple University, Geisinger Health System, and Loma Linda University.

[5] Plaintiff also names "John Doe 1-65" as defendants in this case, claiming that they represent "currently unidentified Defendants who are persons making the discriminatory decisions of the University Defendants and the AAMC" (Am. Compl. ¶ 15).

## II.     DISCUSSION

### A.     Personal Jurisdiction

#### 1.     Legal Standard

Personal jurisdiction is "'an essential element of the jurisdiction of a district ... court,' without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Employers Reins. Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint to determine whether the plaintiff has met his burden of establishing a prima facie case of personal jurisdiction. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). The Court must engage in a two-part analysis to determine if it may exercise jurisdiction over a non-resident defendant. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

The first step for a district court sitting in Florida is to determine "whether personal jurisdiction exists over the nonresident defendant ... under Florida's long-arm statute." *Id.* "A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida...." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015) (citing Fla. Stat § 48.193(1)(a)). "[S]econd, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida...." *Id.* (quoting Fla. Stat. § 48.193(2)).

If personal jurisdiction exists under the long-arm statute, the second step is for the Court to determine whether the exercise of jurisdiction "would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier*, 736 F.3d at 1350. Specifically, the Court must determine whether the defendant has established sufficient "minimum contacts" with the state of Florida, such that the exercise of jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*, No. 0:15-CV-62104-KMM, 2016 WL 1028332, at *3 (S.D. Fla. Mar. 15, 2016) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Both requirements must be satisfied for the court to exercise jurisdiction. *Slaihem v. Sea Tow Bahamas Ltd.*, 148 F. Supp. 2d 1343, 1349 (S.D. Fla. 2001).

## 2.    AAMC

AAMC contends in its Motion to Dismiss that the Amended Complaint alleges no basis for the Court to exercise general personal jurisdiction over it, as AAMC is incorporated in Illinois and headquartered in Washington, D.C., not Florida, and does not otherwise meet any exceptional case where general jurisdiction can be asserted outside of these locations. Plaintiff claims that AAMC's business operations, through its administration of the MCAT and other services, are more substantial in Florida than where AAMC is incorporated or headquartered.

"The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). Where a corporate defendant is neither incorporated in a forum, nor maintains its principal place of business there, general jurisdiction will only arise in the "exceptional case" where its "operations" in the forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 154 n.19.

Plaintiff's Amended Complaint does not set forth sufficient facts to establish that the Court has general jurisdiction over AAMC as neither its place of incorporation nor principal place of business are located in Florida. Plaintiff's jurisdictional allegations focus primarily on AAMC's business operations through administration of the MCAT exam, the American Medical College Application Service ("AMCAS"), and the Electronic Residency Application Service ("ERAS") in Florida, and the revenue it derives in Florida through its business operations. Specifically, the Amended Complaint alleges that AAMC administers the MCAT in 32 testing center locations in Florida (¶ 19), with at least one testing location in every major city throughout Florida (¶ 21). Plaintiff further alleges that individuals in Florida apply to medical school through AMCAS and for residency positions through the ERAS, and pay money to AAMC for these services (¶¶ 31-42). Plaintiff alleges that AAMC "makes significantly more money in Florida in their business operations than where they are headquartered in Washington, D.C. and incorporated in Illinois" (¶ 44). Assuming these facts to be true, these allegations still fall short of what is necessary to confer general jurisdiction over an out of state defendant. Under Plaintiff's theory, AAMC would be subject to general jurisdiction in any state where it made a significant amount of money, which is not that same as maintaining operations that are "so substantial" that it is as if the Defendant were at home. *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."). No version of the facts as pled support a claim that AAMC is "essentially at home" in the state of Florida. *Id.* at 127.

Plaintiff's allegations also do not support the Court conferring specific personal jurisdiction over AAMC. "[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*

*Malletier, S.A.*, 736 F.3d at 1352. In other words, there must be some "nexus or connection between the business that is conducted in Florida and the cause of action alleged." *Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 971 (11th Cir. 1986) (citation omitted); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction ... depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (alteration in original) (citation omitted)). Accordingly, this form of personal jurisdiction applies only "if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of the enumerated categories set forth in [Fla. Stat.] section 48.193(1)(a)." *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1333 (S.D. Fla. 2016) (citing *Schulman v. Inst. for Shipboard Educ.*, 624 Fed. App'x. 1002, 1004–05 (11th Cir. 2015)).

Plaintiff alleges that the Court has specific jurisdiction over AAMC under the Florida long-arm statute because his alleged injury arises out of AAMC: (1) engaging in business in Florida (Fla. Stat. § 48.193.1(a)(1)); (2) committing a tortious act within Florida (§ 48.193.1(a)(2)); and (3) engaging in solicitation within this state (§ 48.193.1(a)(6)). The facts alleged, however, do not demonstrate either that AAMC is alleged to have committed a tort here or that Plaintiff's alleged injuries arise from the business or solicitation activities AAMC conducts in Florida. First, though Plaintiff points to the AAMC's MCAT examination services as engaging business in Florida, these activities are disconnected from Plaintiff's allegations against AAMC, which relate to his rejection from the medical schools he applied to. The same is true for AAMC soliciting Plaintiff by sending him an email asking him to complete his application for medical schools: these contacts are not the basis for Plaintiff's claims. The only tortious act pled against AAMC is for intentional infliction

7

of emotional distress (Count VIII). Not only does the count fail to state a claim (*see infra*), but it fails to specify any tortious act specifically committed by AAMC in the state of Florida.

Because there is no nexus or connection between AAMC's activities in Florida as alleged and any of Plaintiff's claims, the undersigned recommends granting AAMC's Motion to Dismiss for want of personal jurisdiction, and dismissing AAMC as a party, without prejudice.[6]

### 3.    OSU

The Court also lacks personal jurisdiction over OSU, which is located in Ohio. Similar to AAMC, Plaintiff argues that the Court has specific personal jurisdiction over OSU because (1) it engaged in business in Florida through its medical school application process (Fla. Stat. § 48.193.1(a)(1)); (2) because OSU committed a tortious act in Florida (§ 48.193.1(a)(2)); and (3) because OSU has engaged in solicitation in Florida (§ 48.193.1(a)(6)). Specifically, the Amended Complaint alleges that Plaintiff applied to the University Defendants including OSU (¶ 92); received a personalized secondary application requiring a fee (¶ 93); and filled out that application, paid the requisite fee, and submitted the application to OSU and the other University Defendants (¶ 94).

The completion of an online application and the collection of application fees is not sufficient to establish specific jurisdiction under the Florida long arm statute. In *Bond v. Ivy Tech State College*, 167 Fed. App'x 103, 104 (11th Cir. 2006), a case cited by both Plaintiff and OSU, the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's complaint for lack of personal jurisdiction and the failure to satisfy Florida's long-arm statute. The plaintiff, a resident

---

[6] At the hearing, Plaintiff raised the question of whether jurisdictional discovery was warranted, though he did not in fact move the Court for leave to conduct such discovery. If Plaintiff is seeking jurisdictional discovery, Plaintiff "must move the Court to grant the jurisdictional discovery it seeks." *Zamora Radio, LLC v. Last.fm LTD.*, 2011 WL 2580401, at *12 (S.D. Fla. June 28, 2011).

of Florida, argued that the court had personal jurisdiction over the Indiana school defendant on the basis of its "student admissions packets to Florida residents, maintaining a website, and offering distance learning courses over the Internet." *Id.* The Eleventh Circuit found that maintaining a website that is visible in a forum does not confer jurisdiction in that forum. In holding so, the *Bond* court cited to *Revell v. Lidov*, 317 F.3d 467, 470-71 (5th Cir. 2002), which held that a non-resident university's website which allowed users to "submit electronic admissions applications" did not subject the university to jurisdiction in Texas. *Bond*, 167 Fed. App'x at 106. The *Bond* court noted the Fifth Circuit's conclusion that, "'a website is, in a sense, a continuous presence everywhere in the world,' the defendant's contacts were 'not in any way 'substantial.'" *Id.* at 106 (quoting *Revell*, 317 F.3d at 471).

The *Bond* case is instructive as to how intentional an act has to be to confer jurisdiction, and that an electronic admissions application by itself is insufficient to confer specific jurisdiction. Plaintiff's allegations do not satisfy the Florida longarm statute as either conducting or engaging in a business under (1)(a)(1), or as solicitation under (1)(a)(6). Nor should OSU be subject to jurisdiction under (1)(a)(2) for tortious acts because the Amended Complaint fails to state any tort claim against OSU. Accordingly, Plaintiff has not alleged specific facts to establish personal jurisdiction over OSU, and the undersigned recommends that the Court grant OSU's motion to dismiss.[7]

---

[7] In his Response to the University Defendants' Motion to Dismiss, Plaintiff makes reference to jurisdictional discovery to bolster his argument of personal jurisdiction based on solicitation. *See* ECF No. 114, at 6. However, as with AAMC, Plaintiff's request is procedurally defective because Plaintiff "must move the Court to grant the jurisdictional discovery it seeks," as opposed to including it in their response as an alternative basis to deny Defendants' motion to dismiss. *Zamora Radio,* 2011 WL 2580401, at *12 (citing *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1280–1281 (11th Cir. 2009) (denying jurisdictional discovery where "UTC never formally moved the district court for jurisdictional discovery, but, instead, buried such requests in its briefs as a proposed alternative to dismissing APM on the state of the current record")).

**B.      Venue (UCF)**

UCF argues that the Amended Complaint must be dismissed with respect to UCF for improper venue under Rule 12(b)(3) because Plaintiff's claims against UCF should have been brought in the Middle District of Florida. UCF relies on Section 768.28 of the Florida Statutes, which waives sovereign immunity in tort actions for the state of Florida and its agencies or subdivisions. The relevant portion of the statute that UCF relies on provides as follows:

> Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act … Any such action may be brought in the county where the property in litigation is located or, if the affected agency or subdivision has an office in such county for the transaction of its customary business, where the cause of action accrued. However, any such action against a state university board of trustees shall be brought in the county in which that university's main campus is located or in the county in which the cause of action accrued if the university maintains therein a substantial presence for the transaction of its customary business.

Fla. Stat. 768.28(1). At least one Florida court has held that this "home venue privilege" should "always apply without exception" to Florida state university board of trustees parties. *Shands Teaching Hospital & Clinics, Inc. v. Sidky*, 936 So. 2d 715, 722 (Fla. 4th DCA 2006) (applying "the Legislature not only put a lock on the door ("shall"), but added a deadbolt ("however") to secure the statute against any intruder that might hope to pry open the door just enough to let an exception slide through and upset the statutory home venue privilege."). In the alternative, UCF argues that even if Section 768.28(1) did not apply, the Court should still dismiss Plaintiff's claims against UCF pursuant to 28 U.S.C. § 1406 because UCF was improperly joined in this case, where

the allegations against each university are based on particular facts that are unrelated with each other.

UCF is a state university board of trustees located in Orlando, which is in the Middle District of Florida; thus the venue statute applies to suits against UCF. However, Section 768.28(1) only applies to tort claims, of which there are none alleged against UCF in the Amended Complaint; the claims brought against UCF are a breach of contract claim, counts under the ADA and Rehab Act, and a Florida Civil Rights Act claim—all non-tort claims. Indeed, the only case that UCF relies on for the applicability of the "home venue privilege" (*Shands*) involves purely tort claims brought against the board of trustee defendant. *See* 936 So. 2d at 717 ("Count X claimed vicarious liability by UF for the negligence of the Shands staff physicians based on an affiliation agreement.").

UCF contends that Plaintiff's claims under the ADA, the Rehab Act, and the FCRA are "statutory torts," citing to language from *Seguine v. City of Miami*, 627 So. 2d 14, 17 (Fla. 3d DCA 1993) ("A plaintiff suing a governmental entity in tort must allege and prove that the defendant breached a common law or statutory tort duty owed to the plaintiff individually and not a tort duty owed to the public generally."). This case, however, does not stand for the proposition that Plaintiff's claims specifically are statutory torts. Because Plaintiff has not alleged claims against UCF that trigger the "home venue privilege" of Section 768.28(1), the undersigned does not recommend dismissal of UCF as a party, or transfer of claims against UCF to the Middle District of Florida.

UCF's alternate argument under 28 U.S.C. § 1406 fares no better. Section 1406 provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division

in which it could have been brought." 28 U.S.C. § 1406(a). As explained, UCF's argument that

this action is in the wrong district and should have been brought in the Middle District of Florida

is premised on a statute that only applies to tort actions. Though Plaintiff could have brought his

suit against UCF in the Middle District of Florida, Plaintiff has expressed his willingness to travel

to Orlando in order to take depositions of any defendants or witnesses located there. Accordingly,

the undersigned does not recommend dismissing UCF from this action nor transferring the claims

against UCF to another district; UCF's motion to dismiss for improper venue should be denied.

### C.      Failure to State a Claim

#### 1.      Rule 8

Defendants argue that the Amended Complaint fails to meet the pleading requirements of

Rule 8. Specifically, Defendants contend that the Amended Complaint fails to sufficiently put

them on notice as to what the specific allegations against each of them are and fails to allege

specific actions taken by each individual defendant. Defendants characterize the Amended

Complaint as a shotgun complaint that provides little notice of which factual allegations support

each claim.

Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim

showing that the pleader is entitled to relief" using allegations that are "simple, concise, and

direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The Supreme Court has explained that Rule 8 does not

require "detailed factual allegations," but rather demands "more than unadorned, the-defendant-

unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Shotgun

pleadings violate Rule 8 by failing to give the defendants adequate notice of the claims against

them and the grounds upon which each claim rests on. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d

1291, 1294 (11th Cir. 2018). Generally, shotgun complaints contain several counts, each count

incorporating by reference the allegations of previous counts, resulting in a situation where it impossible for the court or the Defendant to know which allegations are intended to support which claims for relief. *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1245 (S.D. Fla. 2018) (citing *Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)). Courts in the Eleventh Circuit have little tolerance for shotgun pleadings as they waste judicial resources, inescapably broaden the scope of discovery, and ultimately wreak havoc on judicial dockets. *Vibe Micro, Inc.*, 878 F.3d at 1294-95.

The Amended Complaint as pled contains too non-specific and generalized allegations to survive the notice requirement of Rule 8. The Amended Complaint generally pleads that Plaintiff "applied to 20 medical schools" (¶ 92); sent out applications that were rejected by the University Defendants (¶¶ 93-95); and was not offered an admission interview by "most" of the University Defendants (¶ 95). The Amended Complaint states that Plaintiff applied the next year through AAMC's application process, but does not allege which schools Plaintiff applied to (¶ 104). The Complaint further states that Plaintiff "created a document clarifying exactly what happened at TJU" including his lawsuit against TJU, and submitted that document to seven of the University Defendants, including OSU, UCF, and UM (¶ 105). Whichever schools Plaintiff had applied to affirmed their previous decisions to not accept him for admission (¶ 106). Plaintiff alleges that he "was told that his denial was either due to the events that happened at TJU or because he sued TJU" (¶ 107).

Altogether, these allegations fail to allege specific actions taken by each individual defendant. In a multiple-defendant action such as this one, the plaintiff's allegations must specify the purportedly unlawful acts of each defendant. *See Dennis v. City of N. Miami*, No. 07-22126-CIV, 2008 WL 783737, at *3 (S.D. Fla., Mar. 21, 2008). Most of the counts are against multiple

defendants, but fail to sufficiently specify how each particular defendant committed each alleged offense. As such, the Amended Complaint does not provide notice to UM or UCF of which factual allegations support each claim, which gives no guidance as to which Defendants committed which acts.

Accordingly, dismissal of the Amended Complaint is warranted. *See Marrero v. Benetiz*, 17-CV-21026, 2017 WL 7796341, at *4 (S.D. Fla. Aug. 3, 2017) (dismissing amended complaint as a shotgun pleading where plaintiffs improperly grouped twelve plaintiffs and five defendants, thereby failing to allege which plaintiffs were bringing claims against specific Defendants or how each plaintiff had been injured by a defendant's conduct). Dismissal for failure to satisfy Rule 8 generally requires that the court afford the plaintiff leave to amend a first complaint. "When faced with a shotgun pleading, a district court must order a litigant to replead for a more definite statement of the claim." *Luft v. Citigroup Global Markets Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015).

The undersigned recommends that the Court dismiss the operative complaint with leave to amend, and instruct Plaintiff that an amended complaint, if filed, must allege the specific actions taken by each individual defendant, and provide notice of which factual allegations support which claim. Moreover, any amended complaint filed should be limited to claims against those defendants still in the case, and should not include facts pertaining to conduct of other dismissed or unserved defendants. Because leave to amend is recommended, the Court further analyzes the deficiencies raised in Defendants' Motions to Dismiss based on Rule 12(b)(6), as repetition of such deficiencies would again warrant dismissal. *See Fox*, 309 F. Supp. 3d at 1245 ("Nevertheless, the Court addresses the Amended Complaint's five claims and the parties' arguments in order to give Plaintiff direction on how to proceed with a final, amended pleading…").

### 2.     Rule 12(b)(6)

The Motions to Dismiss argue that the Amended Complaint should be dismissed for failure to state a claim for which relief can be granted for each of the eight counts, in violation of Rule 12(b)(6). Because the undersigned has recommended dismissal of Defendants AAMC and OSU for lack of jurisdiction (leaving only UM and UCF), it is unnecessary to analyze arguments which pertain solely to these dismissed Defendants. *See Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014) ("Since the Court lacks personal jurisdiction over BAE, I need not consider BAE's 12(b)(6) Motion to Dismiss.").

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

While a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not permit dismissal of a complaint because the court anticipates "actual proof of those facts is improbable;" however, "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

In reviewing the Amended Complaint, the Court holds *pro se* pleadings to a less stringent standard and therefore construes the complaint more liberally. *Tannenbaum v. U.S.*, 148 F.3d 1262,

1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). Although courts afford liberal construction to *pro se* litigants' pleadings, litigants appearing *pro se* must adhere to the procedural requirements of the Federal Rules of Civil Procedure as well as the Local Rules for the Southern District of Florida. *McNeil v. U.S.*, 508 U.S. 106, 113 (1993).

### a.  Breach of Contract (Count I)

Count I alleges a breach of contract claim. To state a claim for breach of contract under Florida law, the plaintiff must plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *See Friedman v. New York Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008) (citations omitted). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Hernandez Law Offices of Arturo Dopazo, III, P.A.*, No. 1:12-cv-23378, 2012 WL 12895228, at *2 (S.D. Fla., Dec. 3, 2012) (citing *Vega v. T-Mobil, USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)).

The Amended Complaint alleges that a contract was established when UM and UCF each "offered to the Plaintiff the potential ability to be fairly and non-discriminatively screened and evaluated for acceptance into medical in exchange for filling out their applications and paying their application fees" (¶ 109); that Plaintiff accepted that offer (¶ 110); and that Plaintiff gave consideration when he "filled out the requested applications from the AAMC and paid the requested fees" (*id.*). The Amended Complaint alleges that this contract was breached when Plaintiff was "discriminatively screened and evaluated" (¶ 112).

Plaintiff has not alleged sufficient facts to support a breach of contract claim, particularly facts that would show the existence of a contract. Plaintiff's theory is that he entered into an

implied contract wherein the medical schools promised to consider his application with non-discriminatory review. But the Amended Complaint does not allege sufficient facts to support what level of review that Plaintiff was promised to receive. Plaintiff has not provided any support for his theory that a contract is formed between an applicant and a university at that stage of the application process. To the extent a contract was formed, the facts as alleged only demonstrate that a promise for the schools to consider Plaintiff's application was made, in which case the allegations do not support a breach of that promise.

At the hearing, Plaintiff presented a larger narrative surrounding his breach of contract claim: that there were meetings between he and university officials, and assurances that if he met certain conditions, he could be admitted notwithstanding what happened at TJU; but when he was denied, he was told (by UM and UCF) that it was exclusively because of the TJU case. These facts are not however alleged in the operative Complaint with sufficient particularity; to the extent additional factual circumstances may support Plaintiff's theory that a contract arose between the Parties, those facts should be included in any amended complaint. Accordingly, Count I should be dismissed without prejudice.

### b.     Title II of the ADA (Count II)

Count II alleges a claim against UCF pursuant to Title II of ADA. Title II applies to public entities, and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful

discrimination because of [his] disability." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (citation omitted).

UCF contends that this count should be dismissed because the Amended Complaint does not properly allege that Plaintiff is disabled; that Plaintiff was qualified for admission to the medical schools; or that UCF knew about Plaintiff's prior disability lawsuit with TJU.

The Amended Complaint does not clearly plead a cause of action under Title II of the ADA against UCF, specifically, that Plaintiff has a disability. The Amended Complaint alleges that UCF "perceived" that Plaintiff had "Bipolar Disorder, or some other serious mental illness" (¶¶ 88, 115); and refers to documentation of a "neuropsychological evaluation" that resulted in Plaintiff being medicated for bipolar disorder (¶ 115). Plaintiff alleges that "Defendants are holding against Plaintiff the past effects of medications to treat Bipolar Disorder, which cause him to have a disability, in their decision to not admit him as a medical student" (¶ 118). Plaintiff further alleges that it "likely" is Defendants' "perception that he will continue to have this learning disability, as this was the perception of their sister AAMC medical school TJU, and thus he is not a qualified applicant" (¶ 119).

These competing allegations make it impossible to determine whether Plaintiff alleges that he is in fact disabled, and if so, what his disability is; or whether it is his theory that he is perceived to be disabled by Defendants. Though the Amended Complaint makes reference to Bipolar Disorder, Plaintiff ambiguously alleges that he was discriminated against only for the "perception" of having Bipolar Disorder or some other mental illness; that he was discriminated against for the "effects of medication" from Bipolar Disorder; or that he was discriminated against for his "refusal" to be treated for Bipolar Disorder. Plaintiff attached to his Response (ECF No 114, Ex. C) a "Neuropsychological Evaluation" completed in 2005 that relates to his dismissal from TJU;

it is not, however, attached to or described in the Amended Complaint. Any amended complaint should specify whether Plaintiff is in fact disabled, and what his disability is.

Count II also includes a separate claim for failure to accommodate a disability, alleging that UCF discriminated against Plaintiff by failing to accommodate his disability in refusing to reconsider the decision not to accept him for admission. (¶ 125). But Plaintiff has failed to identify any reasonable accommodation that he requested of UCF during the medical school admissions application process. While the Amended Complaint alleges that Plaintiff asked UCF to reverse its previous admissions decision, requiring a university to reverse an admissions decision is not a reasonable accommodation. Accordingly, Count II should be dismissed without prejudice with respect to this claim.

### c.      Title III of the ADA (Count III)

Count III alleges a violation of Title III of the ADA for UM denying Plaintiff admission to its medical school due to a disability or perceived disability, and failing to accommodate this disability. Title III of the ADA applies to privately-operated public accommodations, including hospitals, and prohibits discrimination "on the basis of disability in the full and equal employment of goods, services, facilities, privilege, advantages or accommodations." 42 U.S.C. § 12182(a). To state a cause of action for a Title III violation, a plaintiff must allege: (1) "that he or she is an individual with a disability;" (2) "that defendant is a place of public accommodation;" and (3) "that defendant denied him or her full and equal enjoyment of the goods, services, facilities or privileges offered by defendant on the basis of his or her disability." *Larsen v. Carnival Corp.*, 242 F. Supp. 2d 1333, 1342 (S.D. Fla. 2003).

UM contends that Plaintiff has failed to allege that he is a qualified individual with a disability; that UM denied him full and equal enjoyment of the goods, services, facilities or

privileges offered by UM on the basis of his disability; or how UM denied him of such goods, services, facilities or privileges.

The Amended Complaint does not clearly plead a cause of action under Title III of the ADA against UM. Count III alleges that UM is a "covered entit[y] under Title III of the ADA and ha[s] violated Plaintiff's rights under Title III of the ADA by denying admission to [its] medical school[] due to a disability/perceived disability, and failure to accommodate that disability/perceived disability" (¶ 133). The other paragraphs in this Count do not allege any other actions, specific or otherwise, by UM. Even in affording the Amended Complaint liberal construction due to Plaintiff's *pro se* status, it fails to plead with the requisite specificity whether Plaintiff is disabled with Bipolar Disorder; was disabled from the medication he was on at TJU (¶¶ 116-17); or whether he is simply being perceived or regarded as disabled by UM (¶ 133).[8]

Similarly, the Amended Complaint lacks factual allegations to support Plaintiff's claim that his rejection from UM was based upon his disability or perceived disability. However, affording liberal construction of the Amended Complaint as a whole, there may be a basis for his inference that the rejection was based on the disability or perception thereof: in support of his claim that UM violated the Rehabilitation Act (Count IV, analyzed further below), Plaintiff alleges that he was "told by Dr. Richard Weisman, Associate Dean of Admissions at UM, that the reason for his denial is because of the events that happened at TJU" (¶ 159). But Plaintiff also clarifies that each "University Defendant is either discriminating against Plaintiff for a perceived disability or are retaliating against him for TJU in the past. They are not discriminating against his for both reasons." (¶¶ 155-56). So whether Plaintiff interpreted the UM Dean's alleged statement to mean that the "events that happened at TJU" referred to his (perceived) disability, or whether this refers

---

[8] Liberal construction of the Amended Complaint does make it clear, however, that Plaintiff has alleged that he was otherwise qualified for admission to UM and the other University Defendants (¶¶ 82-85).

to Plaintiff's lawsuit against TJU, the Amended Complaint is not clear; while alternative theories may be pled, at a minimum, any amended complaint must set forth a sufficient basis for alleging that the rejection from admission was based on his disability or perceived disability.

The same is true for allegations pertaining to any accommodations that UM should have made for Plaintiff. Though Count IV references the possible accommodations of being allowed to enroll in school "upon showing that he academic issues he had at TJU were due to medication used to treat Bipolar Disorder" (¶ 165); or that he agree to "psychiatric evaluations and monitoring" (¶ 166), Count III entirely omits these pled allegations, without which the claim cannot survive.

Because Count III fails to state a claim for which relief may be granted, the Court should dismiss Count III with respect to UM, without prejudice.

### d.      Rehab Act (Count IV)

Similar to Count III, Count IV alleges a violation of the Rehab Act for UM denying Plaintiff admission to its medical school due to a disability or perceived disability and failing to accommodate this disability. The Rehab Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reasons of her or his disability, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 21 U.S.C. § 794(a). To plead a cause of action under the Rehab Act, a plaintiff must allege that he (1) is disabled under the Rehab Act, (2) was "otherwise qualified" for a program or activity, (3) was excluded from the program or activity solely because of the disability, and (4) sought to use a program or activity "operated by an agency that receives federal financial assistance." *Harris v. Thigpen*, 941 F.2d 1495, 1522 (11th Cir. 1991).

"Discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards." *J.S., III v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). "Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000). However, there are differences between the two Acts: plaintiffs claiming intentional discrimination under the Rehab Act must show that they were discriminated against "<u>solely</u> by reason of [their] disability," 29 U.S.C. § 794(a) (emphasis added), but the ADA requires only the lesser "but for" standard of causation. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008).

UM and UCF contend that Count IV fails to state a claim under the Rehab Act because, as with Count III, Plaintiff has not properly alleged that he is a qualified individual with a disability, nor that he has properly alleged that Defendants' decisions to deny his admissions application had anything to do with a disability.

The Amended Complaint does not plead a cognizable claim under the Rehab Act against UM or UCF. As noted above, Count IV alleges that that each University Defendant is "either discriminating against Plaintiff for a perceived disability or are retaliating against him for suing TJU in the past" (¶ 155), but that "they are not discriminating against him for both reasons" (¶¶ 156, 162). For UCF, Plaintiff alleges that he was "told by Rel Larkin, Director of Admissions at UCF, that the reason for their denial is due solely because of what happened at TJU" (¶ 158). For UM, Plaintiff claims that he was "told by Dr. Richard Weisman, Associate Dean of Admissions at UM, that the reason for his denial is because of the events that happened at TJU" (¶ 159). The problem with relying on these statements to satisfy the causation requirement of the Rehab Act, which requires that the discrimination arises "solely" from the disability, is that Plaintiff has not, as noted above, clearly alleged with the requisite specificity whether Plaintiff is disabled and what

is his disability; or whether he was perceived or regarded as disabled by Defendants. The alleged statements moreover equally support an inference that the rejection was as a result of his lawsuit against TJU, which would defeat his allegation that it was "solely" attributable to his disability.

Because Count IV fails to state a claim for which relief may be granted, the Court should dismiss Count IV with respect to UM and UCF without prejudice.

### e.      Retaliation (Counts V, VI)

Count V and VI allege that UM and UCF engaged in retaliation under the Rehab Act and Title V of the ADA, respectively, by retaliating against him for previously bringing suit against TJU. The ADA makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The prima facie test for retaliation under the Rehab Act is the same as one under the ADA. *Albra v. City of Ft. Lauderdale*, 232 Fed. App'x 885, 891 (S.D. Fla. 2006). To establish a prima facie case of retaliation under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Satchel v. Sch. Bd.*, 251 Fed. App'x. 626, 629 (11th Cir. 2004); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

Defendants argue that, assuming that Plaintiff has satisfied the first two prongs of the prima facie case for retaliation ("engag[ing] in statutorily protected activity" and "suffer[ing] an adverse action"), Plaintiff has failed to demonstrate a causal link between the protected activity (filing the TJU suit) and the adverse action (being rejected from medical school) with sufficient temporal proximity.

23

The Amended Complaint alleges that "[b]y not accepting Plaintiff into their medical schools and most not even interviewing him, […] the remaining University Defendants are either discriminating against Plaintiff for a perceived disability that will continue to impact his performance as a medical student at their University or retaliating against him for suing TJU in the past." (¶ 185). It further alleges that Plaintiff was "forced to disclose the events that happened at TJU;" that "[i]mmediately following this disclosure of the lawsuit the schools still considering him denied his application and said that they would never allow him to attend their medical schools;" and that "[b]efore having to disclose his past proceedings in his application, the University Defendants were likely unaware of Plaintiff's past with TJU" (¶¶ 193-95). Specific to UM, Plaintiff alleges that he was told by UM's Dr. Weisman that his application had been rejected "because of the events that happened at TJU" (¶ 180). And specific to UCF, Plaintiff claims that he was "told by Rel Larkin, Director of Admissions at UCF, that the reason for their denial is due solely because of what happened at TJU" (¶ 179).

In affording the *pro se* Amended Complaint liberal construction, Plaintiff has sufficiently pled a cause of action for retaliation under the ADA and the Rehab Act. While Defendants argue that the Amended Complaint is unclear as to when Plaintiff filed his suit against TJU (though recognizes that it was over ten years ago in its Reply (ECF No. 117, at 11) the triggering event as to Plaintiff's rejection from Defendants is not when he filed the suit, but when he *disclosed* the suit. Plaintiff alleges that "*immediately* following" his disclosure of the lawsuit to Defendants, his application was rejected; thereafter, Plaintiff was specifically told by school administrators that his rejection was because of his lawsuit against TJU. This is sufficient to state a cause of action for retaliation under Rule 12(b)(6), and accordingly, the Motion to Dismiss should be denied with respect to Counts V and VI.

### f.      FCRA (Count VII)

Count VII alleges a claim for a violation of the FCRA against UCF for discriminating against him for a perceived disability, an actual disability from the effects of medication, or retaliation from his lawsuit against TJU (¶ 206); additionally, Plaintiff claims that UCF "likely" violated the FCRA by holding Plaintiff's age against him (41 years old) (¶ 207).

The FCRA was enacted in 1992 to "secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." Fla. Stat. § 760.01(2). The act provides that "[a]ny violation of any Florida statute making unlawful discrimination because of race, color, religion, gender, pregnancy, national origin, age, handicap, or marital status in the areas of education, employment, housing, or public accommodations gives rise to a cause of action for all relief and damages described in s. 760.11(5)." Fla. Stat. § 760.07. The FCRA "shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated [in chapter 760] and the special purposes of the particular provision involved." Fla. Stat. § 760.01(3).

Before bringing a civil action under the FCRA, the claimant must first exhaust his or her administrative remedies by filing a complaint with the Florida Commission on Human Relations ("FCHR") within 365 days of the alleged violation. *See* Fla. Stat. 760.11(1). If the FCHR either determines that reasonable cause exists to believe that a discriminatory practice has occurred or fails to make a reasonable cause determination, the claimant has the right to either bring a civil action or request an administrative hearing under Section 760.11(4).

UCF claims that Plaintiff has not exhausted his administrative remedies in bringing his FCRA claim because he failed to receive a finding of "reasonable cause" from the FCHR in order to proceed in bringing a civil action. Plaintiff relies on Section 760.11(8) of the FCRA, allowing

a claimant to proceed "as if the commission determined there was reasonable cause" where "the commission fails to conciliate or determine whether there is reasonable cause … within 180 days." Plaintiff contends that he has sufficiently exhausted his administrative remedies, relying on the notice he received from the FCHR. *See* ECF No. 92-1, FCHR Notice of Dismissal. Plaintiff maintains that although the FCHR dismissed his action, they failed to "conciliate or determine whether there was reasonable cause of the complaint," which allows a claimant to pursue his action "as if the commission determined that there was reasonable cause." Fla. Stat. § 760.11(8).

Plaintiff has not demonstrated that he has exhausted his administrative remedies in order to state a claim for relief under the FCRA. The letter he received from the FCHR upon filing his claim is titled a "Notice of Dismissal," not a "Right to Sue" letter, and does not contain any such reference to Plaintiff's right to bring a civil action. The letter states as follows:

> The Florida Commission on Human Relations (Commission) is in receipt of your complaint, alleging discrimination in violation of sections 760.01-760.11, Florida Statutes, the Florida Civil Rights Act. The Commission previously notified you that the information submitted on your complaint was insufficient for the Commission to begin its investigation. Pursuant to Rule 60Y-5.001(7), Florida Administrative Code, you were given 60 days to amend your complaint to identify technical defects and omissions or to clarify the allegations. Considering all information received, the Commission does not have authority to investigate, and the complaint will be dismissed.

> Pursuant to the authority vested in me by the Florida Statutes and Rule 60Y-5.006, Florida Administrative Code, I hereby dismiss the above-referenced complaint on behalf of the Florida Commission on Human Relations.

FCHR Notice of Dismissal at 5. The letter reveals that the FCHR was unable to commence its investigation into Plaintiff's claims because it lacked sufficient information and dismissed the complaint, which dismissal Plaintiff is currently appealing in Florida's Third District Court of Appeal. While Plaintiff argues that the FCHR's conclusion is the equivalent of a failure to determine reasonable cause, and UCF argues that is it the equivalent of a finding of no reasonable

cause, neither party supports their position with controlling authority. Under Plaintiff's interpretation of the statute, a complainant who fails to properly initiate the administrative proceedings would nonetheless satisfy his exhaustion requirement necessary to file a civil action after his complaint was dismissed by the agency for failure to comply.

UCF relies on *Maggio v. Fla. Dep't of Labor & Employment Sec.*, 899 So. 2d 1074, 1079 (Fla. 2005) for the proposition that "notice and investigation must both take place before the claimant is even permitted to file a lawsuit." The letter Plaintiff attached states that the FCHR did not begin an investigation, citing uncured technical deficiencies and omissions. This letter does not, as Plaintiff avers, evidence a failure to find reasonable cause. If afforded leave to amend, Plaintiff must demonstrate that he exhausted administrative remedies before initiating suit.

Because Plaintiff has not met his burden to show that he has exhausted his remedies under the FCRA, Count VII should be dismissed without prejudice.

### g.     Intentional Infliction of Emotional Distress (Count VIII)

Finally, Count VIII alleges a claim for intentional infliction of emotional distress. "Under Florida law, a claim for intentional infliction of emotional distress is established by conduct alleged to be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Walton v. Johnson & Johnson Servs. Inc.*, 203 F. Supp. 2d 1312, 1327 (M.D. Fla. 2002) (quoting *Metropolitan Life Ins. Co. v. McCarson,* 467 So. 2d 277, 278 (Fla. 1985)), *aff'd,* 347 F.3d 1272 (11th Cir. 2003). "[W]hether a person's conduct is sufficiently outrageous and intolerable as to form the basis for a claim of intentional infliction of emotional distress is a *matter of law for the court*, not a question of fact." *Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1273 (M.D. Fla. 2016) (quoting *Griffin v. Polk Cty. Sheriff's Office,* 2009 WL 5171754, at *2 (M.D. Fla. Dec. 23,

2009) (emphasis in original). The standard in Florida for "outrageous conduct" is extremely high. *Rumbel v. Suggs*, 908 F. Supp. 901, 903 (M.D. Fla. 1995).

Plaintiff has not pled a set of facts that support a claim for intentional infliction of emotional distress; the alleged conduct does not rise to the level of outrageousness necessary to sustain a claim. The Amended Complaint does not allege any specific actions taken by AAMC, but alleges that UM "led him to believe that his successful admission to medical school would/could happen if he applied to [its] school, met [its] admission criteria, and followed [its] recommendation and feedback" and that for UM to later say that it was never going to consider his application "is intolerable." (¶¶ 209-10). The Amended Complaint further alleges that the emotional distress Plaintiff suffered was from his retaking of the MCAT with people half his age, many of whom felt sorry for him; he shadowed doctors with medical students half his age at UM, many of whom asked him why he was having a career change at age 40; he relived past experiences that have been unfair; he has cried while voluntarily helping patients at the Miami VA while knowing that he should be allowed to do much more as a medical doctor; and he relives his former friends laughing at him and insulting him (¶ 213).

UM's rejection of Plaintiff's application from medical school, even under the worst construction of the facts, cannot support a claim requiring conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." *Walton*, 203 F. Supp. 2d at 1327. Accordingly, the Court should dismiss Count VIII with prejudice.

## III.     CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that AAMC's Motion to Dismiss the Amended Complaint (ECF No. 76) be **GRANTED**, and the University Defendants' Motion to Dismiss the Amended Complaint (ECF No. 92) be **GRANTED IN PART**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 8th day of June, 2019.

_____
LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE